## DRISH v. DAVENPORT.

1. In an action for the seduction of the plaintiff's daughter, evidence of a promise of marriage is not admissible.
2. The character of the daughter for chastity may be impeached by general reputation, but not such as is confined to particular classes of persons.
3. The contents of letters which are lost may be established by any one; the person to whom they are written is not the only competent witness for that purpose.

DAVENPORT declared against Drish, in the Tuscaloosa Circuit Court, in an action of trespass on the case, for the seduction of the daughter of the plaintiff. He charged that his daughter, Eliza, had been seduced and gotten with child by the defendant, whereby he lost her services as a servant, and was put to expense on account of her pregnancy and delivery, and nursing of her child, &c. At March term, 1827, a verdict was found for the plaintiff, for $1,525, damages.

On the trial in the Court below, the defendant introduced witnesses, who stated that previous to the defendant's acquaintance with the plaintiff's daughter, they had frequently conversed with many young men of the town where she resided, with whom she was acquainted, relative to her chastity, and so far as they had conversed, the belief was general among those young men, that she was not a virtuous but an unchaste woman. The Court decided that evidence of her general character in the neighborhood

was alone admissible, that this was too circumscribed to be considered as such, and it was rejected. The plaintiff examined witnesses to prove by parol, the contents of certain letters written by the defendant, to the plaintiff's daughter, the originals having been proven to be lost, to establish the fact of the seduction, and also that there had been a promise of marriage. Some of the letters appeared to have been dated in the summer of 1823, and some were without date; the child having been born in July, 1823. The evidence of these letters was objected to by the defendant, because not proved by the daughter, to whom they were directed, who it was contended was the best witness to prove that fact, her absence not being accounted for; and also on the ground that the evidence was not proper to prove the issue; but the objections were overruled. The plaintiff further offered to shew that previous to the seduction, there had been a promise of marriage by the defendant, to the plaintiff's daughter. This evidence was also objected to by the defendant, but on its being shewn that the plaintiff's daughter had since married, though still objected to, it was received by the Court, who instructed the jury that if they believed there had been a previous promise of marriage, they might take it into consideration in estimating the damages. At the request of the defendant, the Court instructed the jury that no promise of marriage made subsequent to the seduction, was admissible to enlarge the damages, but with the qualification, that the jury might infer and had a right to presume, from proof of promises subsequently made, that there had been a previous promise of marriage, as the letters dated in 1823, referred to promises previously made, though no time was specified when they had been made. At the conclusion of the bill of exceptions, it was stated that the evidence of a promise of marriage was permitted alone with a view of shewing the estimation in which the plaintiff's daughter was held by the defendant, and in that way to make him a witness in favor of her virtue.

The several decisions of the Court, as above stated, were assigned for error by Drish, the appellant, upon which there was a joinder in error, and the death of the appellee being suggested, his administrators were made parties in this Court. [a]

Shortridge argued for the appellant. [b]

Drish
v.
Davenport.

[a] 2 Tidd 1096, 846, 1024.
1 Bacon 8.
2 Saunders 72.
[b] 1 John. Rep. 296. 3 Camp. 519. 2 Phillips Ev. 159, 160.
2 Starkie Ev. 369. 1 Bacon 502. Peakes Cases 156.

JANUARY 1830.

Drish
v.
Davenport.

BARTON & STEWART, for the appellee. The evidence of the conversations with the young men was improper; it is the general reputation alone that is admissible, and even that is a loose kind of evidence; it is but presumptive at best, and the rule should not be extended. [a] Any witness who knows the fact, is competent to prove the contents of a letter which is lost, [b] and there was no error in admitting that proof. [c]

In relation to the last point, the question is not generally whether a marriage promise is admissible evidence in such an action, but the true question here is, was not such evidence proper as rebutting testimony, when the character of the daughter was impeached? The defendant below alleged she was previously unchaste; to rebut this it is material to shew that the defendant did not so consider her, and as an evidence of it, that he promised her marriage. [d] It was allowed for this purpose; for it is so expressly stated in the bill of exceptions, and in construing the bill, it must be so viewed; the bill is to be construed most strongly against the party tendering it, and in fact, in practice, it is drawn up by his counsel, and if too strong in its language, the judge will in general qualifiy it, as was probably the case here, by adding something to it; unless this view is taken, it would appear to be contradictory. [e] But on general grounds, the evidence was proper. [f] This is said to be an action given to the father to compensate him for the injury to his feelings. [g] It is very material to inquire if he connived at the intercourse with his daughter, for if he did, he cannot sustain the action at all. The next inquiry is, was he censurable for this neglect; and this is a most important inquiry; indeed, it is from these circumstances that the amount of damages is always graduated; then it was proper evidence, with a view to shew on what footing he permitted the defendant's visits. [h] If this evidence is rejected, a father careless of his daughter's conduct, is placed on the same footing with the father who is prudent and watchful; and certainly there is much difference as to the damages they deserve; here the father shewed that if he was seemingly careless in suffering intimacy between the defendant and his daughter, it was because he felt fully justified in so acting, as a promise of marriage was mutually interchanged. Again, if it be to compensate feeling, is not the injury aggravated by means employed to deceive, and effect the seduction; and if it be to punish the offender, does he not deserve to be more

a 3 Serg. and R.iwle 366. 5 Esp. Cases 236. 2 Starkie 366. 1 Term Rep. 754. 2 Overton 93. 2 Espinasse 531.

b 1 Starkie's Ev. 356. 1 Starkie's Cases 187.

c Peak's Ev. 17. Phillips 71. 1 Dallas 65. 7 Term Rep. 670. 2 Starkie's Ev. 29, 30, 36, 1 Salk 286. 7 Term Rep. 663. Note.

d 2 Phillips Ev. 156. 2 Esp. 519.

e 1 Bibb 298. 1 Starkie 434. 3 Starkie's Ev. 1310, & Note O. 5 Price 641. 15 John. 146. 2 Wheaton's Selwyn 845. 2 Phillips 159. 3 Campbell 519. Peake 355.

f 3 Esp. N. P. R. 119. 2 Phillips Ev. 156, 7, 160. 3 Starkie 1308. 2 Wheaton's Selwyn 845. 11 East 23. Reeves Domestic Relation 291.

h 2 Phillips 155. 2 Caines. Espinasses Cases 240. Anthons N. P. 196. 4 Term Rep. 652. Norris' Peake 545.

punished, when he has resorted to such means to effect his purpose? [a] Under every aspect, upon the principles of the law, it should be admissible evidence. It is a part of the *res gesta,* and tends to elucidate the facts of the transaction. [b]

But upon authority, although it is stated by most elementary writers that evidence of such promise is not admissible, yet no case can be found, where the principle is directly so decided. In many opinions it is carelessly assumed in argument, and adopted without sufficient reason or investigation; and in no case is it decided upon its own merits, but only intermixed with other questions. The misapprehension grows out of this, and on a minute examination, and by searching the authorities to the bottom it will be found that the objection started in the first cases, did not grow out of the objection to the evidence itself, but it was to the admissibility of the proof by the daughter. [c] When those cases were decided, the rule of evidence was, that any person interested in the question, was an incompetent witness; hence the objection, as in every one of the old cases, the proof offered as to that fact was by the daughter, and she was interested in the question, having a right of action herself. This distinction has not been attended to, and the principle has been loosely copied from one book to another, and finally adopted by judges, from finding it so laid down by the elementary writers, without examination, and without discriminating the reason for the old decisions. But no case is even now to be found, where the naked principle is decided as contended for by the appellant. The old rule of evidence is now exploded, and the daughter would be a competent witness to prove the promise; [d] but in this case the proof was made without her evidence; it is rid of this objection. It is no reason to say the promise is not alleged in the declaration; it is here used as rebutting proof. Neither is the objection good, that the daughter has her separate action on the promise. The promise is not here made the foundation of the action; it is matter incidental; besides, if a man does an act which injures several persons, he owes remuneration to each of them, and it is no answer to say that another may sue also. Moreover, in this cause it was shewn the daughter had since married, she could then bring no action; is this not an exception, as the reason fails? The point is an important one, and should be correctly settled, it is here *res integra.*

HOPKINS, in reply.

JANUARY 1830.

Drish
v.
Davenport.

a 3 Mass Rep. 73, 546. Norris' Peake 542, 5. 2 Esp. 531. 3 Starkie's Ev. 1308, 9.
3 Esp. Rep. 119.
b 3 Esp. N. P. R. 119.
1 Starkie's Ev. 40.
2 Phillips 160,
3 Mass. 546.

c Norris' Peake 544, 241. Strange.

d 2 Caine 291.
2 Term R. 4.

By JUDGE WHITE.    It is insisted in the first place. that the evidence offered affecting the reputation of the plaintiff's daughter for chastity should not have been rejected by the Court below.    It must be conceded that the defendant could prove the want of chastity in the daughter, in mitigation of damages, if the evidence offered for that purpose was in its own character admissible.    The evidence was conversations with young men of the town where the daughter resided, who professed to be acquainted with her, stating their belief that she was unchaste.    Such proof as this, if adduced to general character, was too circumscribed, and if designed to establish any particular act of lewdness, was obnoxious to the objection that the authors of the report were not upon oath when they communicated the facts spoken of in conversation, nor subjected to the legal test of cross-examination.    The Circuit Court then, in rejecting this evidence, did not err.    Again, it is insisted that there was error in permitting the plaintiff below to introduce parol evidence of the contents of letters purporting to have been written by the defendant to the plaintiff's daughter; the letters having been shewn to be in the hand-writing of the defendant, and previously lost.    The contents of these letters were proven, to establish, first, the fact of seduction, and secondly, a promise of marriage.    The objections taken are, that as the knowledge of the plaintiff's daughter was the best evidence of their contents, and her absence not accounted for, other proof was secondary, and should not have been admitted; and furthermore, that they were illegal testimony under the issue joined.    The witnesses sworn had seen the letters, and their knowledge of their contents was the same grade of evidence with that of the daughter to whom they were addressed, and consequently they could be proven as properly by them as by her.    They contained admissions of the seduction, a material part of the issue, and to that extent certainly were admissible.    But whether in this action by the father for the seduction of his daughter, the Court should have permitted a promise of marriage to be given in evidence to the jury, presents the last and most important inquiry raised by the argument.

The present is in form an action for the loss of service.    But according to the indulgent practice of the Courts, this is often, if not always, the least important consideration for the jury.    They may and should, in

JANUARY 1830.

Drish
v.
Davenport.

the language of the books, remember that it is an action brought by a parent for an injury to his child, and take into consideration all that he can feel from the nature of the loss. They may look upon the parent as loosing not merely the service, which is comparatively a paltry thing, but the society of his daughter, in whose blasted virtue even his confiding heart can no longer repose. They may view him as the father of other children, whose morals may be infected by the example of a ruined sister, and whose standing in life cannot but be injured by her disgrace. All these considerations may be weighed by the jury in estimating damage, and proof of the situation of the father, of his family, and other circumstances auxiliary to such an inquiry, may be adduced; but notwithstanding the great latitude allowed to plaintiffs in this kind of action, there are limits beyond which they cannot go. The boundary which the law has prescribed for the different forms of action is so essential to the rights of parties, and the wholesome administration of justice, that they should not be entirely disregarded, even to reach with the severest lash, the vile seducer who has despoiled the daughter of her virtue, and her father of his peace. It is a principle of natural justice, that a man, however great the injury he has inflicted, should not be compelled to pay twice for the same substantial cause of action; and if he is ever held responsible to more than one, it is because he is considered as having done distinct injuries to each. Hence the existence of the rule, that although you may give in evidence all that really constitutes the *res gesta*, to explain the true nature of the transaction, and the accompanying circumstances, to enlarge the damages, yet it is with this restriction, that whenever the evidence offered amounts in itself to a distinct and substantive cause of action, it must be rejected. Apply these principles to the case at bar: the action is by the father, for a tort; the daughter is likewise entitled to her suit for a breach of marriage contract, and whatever length the law may have gone in its sympathies for the suffering parent, it would be a total destruction of its own land marks, to permit a promise of marriage, which in itself constitutes the distinct ground of a separate action by a different person, to be given in evidence to the jury. Again, this action is *ex delicto*, and the promise of marriage *ex contractu*, which makes in estimation of law such an entire distinction, that they

could not be joined in the same declaration, by the same plaintiff. But furthermore, the object of the pleadings is to give notice at least to a reasonable extent; and it is obvious, that if, when called on to answer one cause of action, the defendant could be proceeded against for an injury so essentially different as to require a distinct form of action, he would be taken by surprise, and condemned without an opportunity of preparing for his defence. After this slight view of the case upon principle, I will proceed to examine it upon authority.

In 2d Phillips, *a* it is said in relation to this kind of action, "evidence of the defendant's having given the daughter a promise of marriage, is not admissible," and the reason assigned is, "because the breach of such an engagement may be made the subject of another distinct action."

In the case of *Dodd v. Norris*, *b* it is said, that after cross examination of the daughter, to shew that she had submitted herself to the defendant's embraces under circumstances of extreme indelicacy, she was asked, whether the defendant had not promised her marriage. This was objected to, and Lord Ellenborough, as if doubting whether they might go even that far, and cautious not to violate the rule, observes, "I think you may ask her whether he paid his address to her in an honorable way. But further than this, you can on no account go." He continues to assign the reasons in these words: "To admit evidence of a direct promise of marriage, would be to allow the parent to recover damages for a breach of that promise upon the testimony of the daughter." His Lordship also, in adverting to the nature of the action, and the anomaly, that when loss of service was established, a further compensation is allowed for an injury to parental feelings, says: "It is necessary to watch that this anomaly should not be carried farther, and that the original scope of the action should not be lost sight of." This same doctrine is to be found in Norris' Peake, *c* and indeed it seems to run through all the books that I have examined, with the exception of Starkie's own suggestion in his treatise on evidence. *d* Here the author, while he himself questions the doctrine, admits its existence upon authority. In the case cited from 1 Johnson 297, it appears that Mr Justice Livingston had violated this principle, on the Circuit, to a great extent. But when the case came up for revision, he candidly admitted his error, by observing, "the daughter was not only interested to say what she did in support

of her own character, but was swearing to enable the father to recover in an action for the loss of his daughter's services, compensation for a breach of promise of marriage; in itself a substantive and distinct cause of action. with which he had nothing to do, and against which the defendant could not be ready to defend himself." He adds, "testimony of this nature never was admitted in England." The other members of the Court also recognize this principle, and say the daughter cannot be a witness to prove such promise; for they observe, "she has herself a cause of action against the defendant. The father's action is *tort*, that of the daughter, for breach of promise." This examination of the books shews that there is an unvaried current of authority in favor of the position, that in an action by the father for the seduction of his daughter, evidence of a promise of marriage should not go to the jury. It is however contended by defendant's counsel that it is not the evidence itself, but the source whence it comes, that constitutes the strength of the objection laid down in the authorities. In some of the cases cited, it is true, the Courts seem to lay stress on the fact, that the promise was proven by the daughter; but I cannot perceive how this varies the principle. If lawful to prove it at all, why not by her as well as another? Formerly, it was held that she had such an interest in the question as would exclude her testimony altogether; but the more liberal views of modern times have overruled this doctrine. She certainly has no interest in the record; as a recovery by the father could not be given in evidence by her in a suit for breach of marriage contract; nor could what she might testify in the one case, be adduced in her favor in the other. If, as I admit, it is reasonable to suppose she might be inclined to lessen her own infamy by proving a promise of marriage, this would rather affect her credit than destroy her competency. It is not then, as I presume, because of the daughter's incompetency to prove the fact, that it has so uniformly been excluded, but because the evidence itself is inadmissible. Again, it should not be forgotten, that from the very nature of the fact to be proven in such cases, the daughter would almost universally be the only person who could know it; and hence the question has so generally arisen upon the attempt to prove it by her testimony alone. But enough can easily be collected from the authorities, to shew that the principle of exclusion exists independently of that cir-

cumstance. In the case already cited, from 1st Johnson's Reports, Judge Livingston, though he refers to the fact that he permitted the daughter to prove the promise of marriage, yet he by no means relies on that as the main reason why he erred on the Circuit; but emphatically remarks, "that the promise of marriage was a distinct cause of action, with which the father had nothing to do, and against which the defendant could not be ready to defend himself." Phillips, an elementary author of great respectability, lays down the doctrine as contended for, without any qualification, as appears from the quotation already made; and it is remarkable that Starkie, whose *dictum* is the only semblance of authority adduced to shake the position I maintain, in the very place where he states the doctrine to object to its principle, takes it from the same reporter and gives it in the same language that Phillips does, not laying any stress on the circumstance of the daughter's being the witness. His words are, "it has been said, that evidence that the defendant prevailed by means of a promise of marriage, is inadmissible," and then proceeds to give his own opinion. Here then, are two writers of acknowledged accuracy, the one for and the other against the principle in question, who both derive it from 3d Wilson, and both concur in stating it without restriction. It is surely then a fair presumption, that if the original reporter could be had, it would be found there maintained, that in an action like the present, evidence of a promise of marriage should not be given by the daughter or any other person. But the counsel for defendant in error insist, that as the bill of exceptions shews that proof of a promise of marriage was permitted to go to the jury, not to affect the damages, but to sustain the character of the daughter, previously assailed, it was in this view unexceptionable. If it were granted that this was the only design of the Court in admitting the evidence, I should still think there was error; for even then, there would be no reasonable certainty that it was not considered of by the jury in estimating the damages, and being calculated to produce illegitimate consequences, it should have been entirely excluded. But from the bill of exceptions it appears, that when first proposed, it was objected to, and upon its being shewn that the daughter had married another since the promise of marriage made to her by the defendant, though still objected to, the Court permitted the evidence to be given, and charged the jury

that if they believed there had been a previous promise of marriage, they might consider the same in estimating the damages. True, in the latter part of the bill of exceptions, it is said that the evidence of promise of marriage was admitted, with a view alone of shewing the estimation in which plaintiff's daughter was held by defendant, and in that way to make him a witness in favor of her virtue. These two parts of the bill of exceptions are evidently incompatible. But even if we take the latter statement as presenting the true aspect, still the evidence was admitted, and might have had, because calculated to produce, an effect which the law cannot sanction. I am then of opinion, that for this error the judgment should be reversed; and as Davenport, the plaintiff below, has departed this life, and the action is to redress a personal wrong, we think it cannot be revived, and therefore that the case should not be remanded.

By LIPSCOMB, Chief Justice. It is with extreme reluctance, that I have yielded my assent to the reversal of the judgment in this case, and I have at last been compelled to subject the best reasoning of my mind on the question, to the influence of adjudged cases. I had hoped that some contrariety of decision might be found, that would authorize us to sustain the judgment of the Circuit Court; but in this I have been disappointed; the authorities are all opposed to it. Starkie expresses his own opinion of what the law ought to be, and it does seem to me, that there is much good sense in it.

That such testimony should not be admitted in the first instance, is abundantly clear; for the reason that the promise of marriage could be made the ground of an action for its breach. But when it has been attempted to be proven by the defendant, that the father had exposed his daughter by gross neglect and indifference to her conduct, and had thereby invited the seducer to an attempt on her virtue, the father should surely be then permitted to rebut so disgraceful an imputation, by proving that he had every reason to believe the addresses of the seducer were honorable, and that interviews were permitted between the two young persons, under the solemn sanction of a marriage promise. What parent would not relax in his vigilance after a marriage promise had been entered into between his daughter and the man of her choice; and that choice too, approved by himself? He would be apt,

JANUARY 1830.
Drish
v.
Davenport.

under such circumstances, to look upon them as one, in the eye of the soundest canons of morality, and as requiring nothing but the forms of law to make them husband and wife. If under the sanction of such a promise, he permitted them to be alone frequently, who would say, that for such confidence he deserves his shame, when the man whom he had thought but little less than a ministering angel, had proved a fiend, and had filled for him the cup of bitterness, and compelled him to drink its dregs. These considerations are all met by adverse authority; and we can only regret, that a rule of evidence more consonant to reason and to the ends of morality, had not been established.

JUDGE TAYLOR concurred with JUDGE LIPSCOMB, in the views above expressed.

Judgment reversed.

