## SHATTUCK v. MYERS.*

A change of venue must, in civil actions, be granted upon a proper application. The Court has no discretion.

As a general rule, an application for a change of venue must be made and supported by the affidavit of the party, in person. The affidavit of his attorney will not compel the change.

There are exceptions to this rule; as, in suits by or against corporations.

It is within the sound, legal discretion of the Court to grant or refuse a change of venue upon application and affidavit by a person not a party to the record.

A second affidavit for a continuance, at the same term, for the same general reason, namely, the absence of witnesses—the first having been overruled—was held bad, because it did not show a reasonable excuse for the failure to embrace all the reasons for the continuance in the first application.

---

* The petition for a rehearing of this case was filed on the 28th of *July*, and overruled on the 8th of *November*.

The Court has greater latitude of discretion in passing upon such applications, than in ordinary cases.

In an action for seduction, the general character for chastity of the person seduced, is in issue, and may be impeached or supported by general evidence; but she cannot be asked whether she had not been previously criminal with other men. But other persons may be called upon to testify as to their own criminal intercourse with her, and the time and place.

The question of character is involved in the question of the amount of damages; and, therefore, evidence of the character and the acts of the female seduced, is admissible, which would not be proper as to any other witness.

*May Term,* **1859.**

SHATTUCK
v.
MYERS.

APPEAL from the *Vigo* Circuit Court.

*Monday, May 30.*

HANNA, J.—This was an action against *Shattuck*, by *Myers*, for the seduction of his daughter.

Trial; verdict and judgment for the plaintiff for 1,500 dollars.

Several errors are assigned—

*First.* Upon the ruling of the Court on the motion to change the venue.

It appears by the record, that the defendant was not present at the trial, in person, and that the application for a change, was made and supported by the affidavit of his attorney.

It has been several times decided, that applications in civil actions, for a change of venue, when properly presented, should be granted, and that the granting or withholding thereof, was not within the discretion of the Court. *Witter* v. *Taylor*, 7 Ind. R. 110.—*Shaw* v. *Hamilton*, 10 *id.* 182.

In *Sherry* v. *Denn*, 8 Blackf. 543, it was held that, under the statute then in force, a stranger to the record could not make the affidavit. The wording of that statute is slightly different from that under which this case was decided. Without doubt, there are cases in which persons other than parties to the record, would have to make the affidavit, if made at all; as in suits by or against corporations, &c. But these cases, in our opinion, are exceptions to the general rule, which is, we think, that the application should be made by the party, and supported by his affidavit. It is, in one sense, a personal privilege a

party possesses, to be tried by a jury of the vicinage, or to waive the right to be thus tried, by asking a change of venue. 7 Ind. R. 110.

The statute is, that "The Court in term, or the judge in vacation, may change the venue of any civil action, upon the application of either party, made upon affidavit showing," &c.

It would be the duty of the Court, upon a proper case made by the application and affidavit of the party, to grant a change. There would be no discretion. But whilst we say this much, we are inclined to think that in the further consideration of the statute, and the practice that arises under it, we must either admit, under proper limitations and restraints, or entirely exclude, applications in behalf of a party, made by persons not parties to the record. If, in putting a construction upon the statute, it should be determined that no one but the party can make the affidavit, we can perceive that very great injustice might be done to parties who were necessarily absent, or who could not make the affidavit. If we determine that the affidavit of persons other than the party, may be received, then the question arises, what limit is there to the introduction of such affidavits? Shall the affidavit of any one be received, and compel an order by the Court to change the venue? Such a construction as this might, and, we doubt not, would, often lead to a virtual defeat of the ends of justice.

Viewing the whole matter in this light, we are inclined to think that the proper practice is, to leave it in the sound legal discretion of the Court, to grant or refuse the change, upon application, &c., made by one not a party to the record.

We are strengthened in this construction of the statute, by reference to other statutes, to-wit, regulating applications for writs of attachment, *habeas corpus, capias*, &c., in each of which the affidavit may be made by the party, his agent, or attorney.

The affidavit in support of the application in the case at bar, having been made by the attorney in the case, not

disclosing any reason for the absence of the defendant, or why he did not make the affidavit, we cannot say that the Court abused that discretion.

*Second.* Was it error to refuse a continuance because of the absence of the witnesses named, to-wit, *Wilson, Paddock,* and *Stewart.* This was the second application, at that term, for a continuance for the same general reason, namely, the absence of witnesses. The first was overruled, whether correctly or not we are not called upon to decide, as no point is made upon that ruling. Rule 28.

Upon these facts a question is raised, as to what the practice should be.

"A motion for a continuance, is an application to the sound, legal discretion of the Court, over which, if improperly used, a superior Court will exercise a control." *Vanblaricum* v. *Ward,* 1 Blackf. 50.—*Espy* v. *The State Bank,* 5 Ind. R. 274.

In an application for a continuance, counter affidavits should not be received. *Hubbard* v. *The State,* 7 Ind. R. 162. Nor amendments permitted to those filed after a decision of the motion founded thereon. *Driskill* v. *The State, id.* 341.

We are not apprised of any reason why the practice should not be as strict in civil as in criminal cases.

If it is not proper to permit an amendment to an affidavit, after it has been passed upon, we cannot see how such application can be distinguished from one renewed for the same general cause with that overruled; especially where that cause existed at the time of the first application. In the case at bar, the defendant conceived he had a right to a continuance, because of the absence of witnesses. An affidavit was filed as to one, and the motion overruled; but suppose that, instead of the Court taking action upon it, the plaintiff had offered to admit, as true, the matters that it was averred in the affidavit the witness would testify to. This he had a right to do.

What, then, would have been the rights of the defendant? Could he, as a matter of course, have proceeded to file an additional affidavit, stating that other witnesses were

May Term,
1859.

SHATTUCK
v.
MYERS.

absent, by whom he could prove other facts, &c., without showing that some excuse existed for not including all the reasons in the first application, that existed at the time of making it?

If the witnesses named in the second affidavit, in the case at bar, had appeared and testified, as it was stated in the affidavit they would, their evidence could have been received but for one purpose, to-wit, in fixing the amount of damages, and not in bar of the action.

Whatever may be the correct general rule, in the instance above suggested, we are of opinion that, in this case, under the circumstances, the second affidavit should have contained a reasonable excuse for the failure of the defendant to avail himself of these causes for a continuance, which existed at the time of his first application, in making that motion. At least, it is manifest to us, that where an application is made, under such circumstances, for a continuance, to obtain evidence of the character indicated, it is but right to allow a greater latitude of discretion in the judge presiding at the trial, in determining upon that point, than in usual and ordinary applications; and, as we cannot perceive any abuse of that legal discretion here indicated, we do not think there was any error in the ruling upon the second affidavit.

*Third.* Was there error in the rulings of the Court in refusing to admit evidence?

Upon the cross-examination of the leading witness in the case, namely, the daughter of the plaintiff mentioned in the pleadings, she was asked whether, a short time before she had intercourse with the defendant, she had not had intercourse with *Davidson Rainey*, or *Seth Clarke*, or *Benjamin Howell*, or with the schoolmaster, *Kirkland*, or with any other man, shortly before or after such acts with the defendant.

Upon objection made by counsel, the Court ruled that the witness was not compelled to answer the questions.

In answer to questions afterwards put by the plaintiff, she stated that "the defendant was the father of the child; that she never had had connection with her husband,

May Term, 1859.

SHATTUCK
v.
MYERS.

*Clarke*, before their marriage, nor with *Howell*, nor with *Rainey*."

It will be observed that the answer does not cover all the questions. Nothing is said about *Kirkland;* or, in answer to the general question, as to other persons.

The point is, therefore, presented, that the ruling of the Court was erroneous, and, because of the limited answer afterwards elicited, was injurious to the defendant.

In 2 Greenl. Ev., § 577, it is said that the general character of the person seduced, for chastity, is considered to be involved in the issue, and may, therefore, be impeached by the defendant by general evidence, and supported by the plaintiff in like manner; but she cannot be asked whether she had not been previously criminal with other men. But other persons may be called to testify as to their own criminal intercourse with her, and the time and place. *Bomfield* v. *Massey*, 1 Campb. 460.—*Dodd* v. *Morris*, 3 *id.* 519.

The last cited case, was a suit by a father for the seduction of his daughter. She was introduced by the plaintiff as a witness, and upon her cross-examination she was asked a similar question, as to whether she had had previous intercourse with other men, but, upon objection made, she was not permitted to answer. This is a strong case for the reason, that it was shown by other witnesses that this was the second illegitimate child the female had borne; and yet her father had judgment.

The defendant relies upon the case of *The People* v. *Abbott*, 19 Wend. 192. That was an indictment for a rape, in which it was determined that, upon the examination of the prosecutrix, it was proper to ask her questions as to her former criminal connection with other men; and it was placed upon the ground that "any fact tending to show that there was not the utmost reluctance and the utmost resistance, is always received." After examining the question at length, the judge who delivered the opinion of the Court, says: "I have been quite unfortunate, if I have not shown that in this case of rape, the question is very mate-

rial in examining the probability of assent—the vital inquiry in the case."

In the case at bar, the question of assent of the female alleged to have been seduced, was not in issue. *McAuley* v. *Biskhead*, 13 Ired. 28. In the case cited, the plaintiff sued for the seduction of his daughter, &c. The evidence showed that upon a proposition made by the defendant to the female, she at once, without objection, and without being persuaded thereto, consented to improper intimacy. Upon this state of facts, and instructions thereon, the Court say: "The gravamen of the action is, that the defendant had connection with the plaintiff's daughter, and a member of his household, and, in contemplation of law, his servant, whereby she became pregnant and was delivered of a child, by reason of which he lost her services. The plaintiff having proven these facts, made out his case, and was entitled to damages to some amount.

"Whatever bearing the forward and indelicate conduct of the daughter ought to have had on the question of damages, it certainly ought to have had none on the question of his right of action. In respect to him she had no right to consent, and her act in assenting to, or even in producing, the criminal connection, was a nullity."

This doctrine appears to be based upon the theory that the female seduced stands as any other witness in the case. Her testimony is not indispensable, for the plaintiff may be able to make out his case without her. In contemplation of law, he recovers but for the loss of her services; though, in practice, juries are permitted to, and usually do, take into consideration the position of the parties in society, their character, and consequently the extent of the humiliation and dishonor that is occasioned to the parent by the act. Therefore, the question of character is involved in the question of the amount of damages; for that reason, evidence of the character and acts of the female seduced, is received, which would not be proper as to any other witness.

*Per Curiam.*—The judgment is affirmed with 3 per cent. damages and costs.

*J. P. Usher* and *J. W. Gordon*, for the appellant.

*R. W. Thompson* and *J. P. Baird*, for the appellee.