## BAIRD v. BOEHNER.

1. **Seduction:** EVIDENCE INSUFFICIENT TO ESTABLISH. The evidence in this case considered (see opinion) from which it appears that plaintiff was informed by defendant before the alleged seduction was accomplished that his object in visiting her was to procure sexual intercourse, and that she was induced to yield to him, not by any false promise, nor by flattery, nor by artifice or deception, but because he stated that if she did not yield he would abandon her and go with other women. *Held* that this evidence was insufficient to establish a case of seduction, and that a verdict for plaintiff should have been set aside.

*Appeal from Mills Circuit Court.*

THURSDAY, JUNE 30.

THE petition states that in "June, 1883, the defendant, by artifice and false promises, by false pretense of affection for her, and by false promises of marriage, and other artifice and

false promises, did seduce and debauch her, she being at the time an unmarried female of previous chaste character." The defendant denied the allegations in the petition. Trial by jury, verdict and judgment for the plaintiff, and defendant appeals.

*Lewis & Young* and *Watkins & Williams,* for appellant.

*A. R. Anderson* and *Stone & Gilliland,* for appellee.

SEEVERS, J.—The plaintiff was a witness in her own behalf, and she testified that prior to July, 1882, she became acquainted with the defendant, and that he had visited her frequently at her home, and paid her considerable attention. At the time above stated he took her in a buggy to Glenwood, several miles distant from her home, and there had sexual intercourse with her. Thereupon the defendant pleaded the statute of limitations, and, as this action was not commenced until November, 1884, it is not claimed that if plaintiff was seduced at the time above stated she can recover damages therefor. The plaintiff at the time above stated was about twenty-five years old, and she testified that the defendant frequently had sexual intercourse with her between July, 1882, and the last of August following. During that time the plaintiff testifies she determined to reform, and for this purpose, at least in part, she went to Kansas, in September, 1882, and remained there until April, 1883, when she returned to her home in Iowa, and she testified that no one had sexual intercourse with her during the time she was absent in Kansas. The court submitted to the jury the question whether the plaintiff had reformed and was of chaste character at the time she claims the second seduction took place, which was in June, 1883. Within a day or two after plaintiff's return from Kansas, defendant called on her, and they took a buggy ride, and in relation thereto, and the subsequent acts and conduct of the parties, the plaintiff testified as follows: " Boehner came Sunday afternoon about 2 o'clock.

Asked me to go buggy riding. Told him I would. Went as soon as he got the team. I loved him still. He wanted me to do the same that afternoon as we did before I went away. I told him I did not wish to. Had made resolutions, and wanted to keep them. He pulled up my clothes and felt of my person that afternoon. Told him I did not want him to; that I thought that was as bad as the act itself. He finally stopped when he found I would not give up. Saw him the next Sunday at home. He tried to do the same as before. I did the same as before. Told him it was no use talking; would not give up. He said if I did not go with him he would go with some other girl; that he could get around any of the women. He kept coming to see me, and I told him I did not want him to; said he was coming any-way. After I came back from Kansas saw him almost every Sunday. He told me that he loved me, and called me 'Dear May' lots of times. Thought more of me than any other girl he ever saw, because he said he knew I had never been with any other man.     *     *     *     We were out riding one Sunday evening, and as we came back we passed one of his houses, and he said: 'May, that is where you and I are going to live when we get married.' That was in September, 1883. He said I had a pretty form, and I was very kissable, and had pretty eyes. He said: 'May, I know you are better than me,' and when I told him, with the position I had at the time, it was dreadful for me to do as I had done, he says: 'Oh, the smartest of girls we have are mean.' He said he loved me better than any one else. He gave reasons for so doing, and said when he was around with other girls he felt different; did not feel as much at home. *     *     *     He said he had a regard for me, because he knew I was a virtuous girl.     *     *     *     During the month of June, after my return from Kansas, he told me he loved me, and I thought if I did not give up to him he would marry me. I thought so much of him. He says: 'If you don't do as I want you to I will go with some other girl.' I

could not bear the thought of his going with any one else. He said if I would do as he wanted me to he would come and see me all the time. In September we went to Sidney. On the way home he says, 'May, do you think you and I could live happily together?' and I told him I thought we could, and I says, 'Len, I will be as true as steel,' and he says, 'I know you would,' and changed the subject. I submitted to him on the last of June, north of town, when we were out buggy riding, about two months after my return from Kansas. Came home last of April, and this was the last day of June. He succeeded in accomplishing his purpose by telling me he would abandon me, and go with some other girl; and if I would submit to him he would stick by me, and would not leave me. I loved him. He said he could go with any woman. Said he had been with girls, and proposed the thing, and, 'Oh, they thought it dreadful at first;' but he said before he got through he got what he wanted."

We have set out all the evidence of the plaintiff on her examination in chief, as to the acts, conduct and what the defendant said after the plaintiff's return from Kansas, and up to the time what is claimed as the second seduction took place. After this last period there were frequent acts of sexual intercourse between these parties. And the plaintiff further testifies: " I felt I had done wrong again. I told him my school commenced in September, and I felt I was imposing on the people to go and teach. I could not look my scholars in the face. It seemed as though I could see it everywhere; on the wall and all around. He would take me out to my school, and come and take me home. I told him I was going to commence with the new year; and he promised if I would just once more, that was the 23d day of December, that he would never come to our house any more; he would not bother me any more; I could commence with the new year; and I did; but he kept coming all the

time, and I would not go to the door and let him in; I would let some of the rest of the family. The last time I had intercourse with him was December 23, 1883. He kept coming there just the same, and I says: 'Why, Len, you promised you would not come any more.' 'Well,' he says, 'I can't help it;' and he kept coming till I left, in April, 1884. Discovered I was about to become a mother about the middle of March, 1884.".

Counsel for the appellant insists there is no evidence tending to show that the plaintiff was seduced in June, 1883. "It is not sufficient to establish the sexual intercourse, but the plaintiff must show that defendant accomplished his purpose by some promise or artifice, or that she was induced to yield to his embrace by flattery or deception. If without being deceived, and without any false pretense, deceit or artifice, she voluntarily submitted to the connection, the law affords her no remedy." *Smith v. Milburn*, 17 Iowa, 30. For the purpose of this opinion, it will be conceded that there was evidence tending to show that the plaintiff had reformed, and was of chaste character in June, 1883. The first time the defendant was in company with the plaintiff after her return from Kansas he made an improper proposal to her, and took indecent liberties with her person, that should have shocked a matured woman of chaste character. He proposed sexual intercourse, which she refused, and she objected to the liberties taken with her person. There was, however, no show of indignation on her part at either the proposal or liberties taken. He kept coming to see her, and told her that he loved her, and she thought that if she did "not give up he would marry her;" and he told her, "If you don't do as I want you to I will go with some other girl." She then was clearly and explicitly advised that his object in visiting her was to obtain sexual intercourse. This was before the claimed seduction took place. Knowing his object, she permitted him to visit her frequently, and he finally "accomplished his purpose by telling her he would abandon her, and go with

Baird v. Boehner.

some other girl, and if she would submit to him, he would stick to her." The plaintiff, therefore, being a chaste woman, yielded her person to the embrace of the defendant, knowing all the time that his object in visiting her was to obtain sexual intercourse, simply because he told her if she did not yield to him he would abandon her and go with some other girl; that is, that he would cease to visit her. It must be remembered that there was no promise of marriage. What was said in relation to marriage was said in September, and the claimed seduction took place in the preceding month of June; nor was there any false promise of any kind. His declaration that he would abandon or cease to visit her clearly cannot be regarded as a false promise, deceit or artifice. It is true, there is evidence tending to show that he loved her, and that she loved him, and that he said " she had a pretty form, was very kissable and had pretty eyes." Whether this was said before or after the claimed seduction does not appear, but, conceding it was before that time, sexual interrourse was not obtained because of the expression of love, or by reason of flattery. It was not for these reasons that she yielded.

The conduct of the defendant is indefensible, when viewed from the plaintiff's standpoint, or from the standpoint of morality and decency; but, as we have seen, the plaintiff cannot recover simply because she indiscreetly permitted the intercourse to take place; and, as there is no evidence tending to show a false promise or any deceit or artifice, she is not entitled to recover, and therefore the court should have sustained the motion for a new trial.

REVERSED.