[Filed January 15, 1889.]

## JOHN PATTERSON, Respondent, v. CLELL HAYDEN, Appellant.

SEDUCTION — PREVIOUS UNCHASTITY — REFORMATION. — A woman may be unchaste, and then reform and lead a virtuous life, and if she is then seduced, her seduction ought to be visited with such damages as a jury would think, under all the circumstances, the defendant ought to pay; but to justify a recovery there must be a reformation.

SEDUCTION DEFINED. — The word "seduction," when applied to the conduct of a man toward a woman, means the use of some influence, artifice, promise, or means on his part, by which he induces the woman to surrender her *chastity and virtue* to his embraces: *therefore, held,* that criminal indulgence with a woman who was at the time leading a lewd and lascivious life does not constitute seduction.

EFFECT OF EVIDENCE — PROVINCE OF THE JURY. — It is the right of the jury, and not of the court, to determine the effect of evidence, unless in particular cases where its effect is declared by law.

APPEAL from Marion County.

*G. H. Burnett* and *E. A. Downing,* for Respondent.

*N. B. Knight* and *McCain & Hurley,* for Appellant.

STRAHAN, J.—This is an action brought by the plaintiff against the defendant to recover damages for the seduction of his minor daughter.  The plaintiff had judgment in the court below for the sum of $3,633, from which the defendant has appealed to this court.  The only questions presented for our consideration on this appeal are the alleged errors of the court in giving and refusing instructions.  The appellant's counsel excepted severally to one instruction given by the court, and to its refusal to give those asked on behalf of the defendant.

The defendant gave evidence tending to prove that for a long time prior to the alleged seduction, and continuing up to that event, the plaintiff's daughter resided with her parents in the city of Salem; that she was in the habit of meeting several young men of her acquaintance, including the defendant, out in the streets and avenues of the city in the night-time, and alone; that these meetings were as late as nine and ten o'clock, or later; that on these occasions the parties did not go to the house of plaintiff's parents for her, but that she came out to meet them.

The testimony of Stella Patterson tended to prove that the first sexual intercourse between herself and the defendant took place on the 4th of July, and according to Dr. Holmes's evidence, when Stella applied to him for treatment in the month of August following she was afflicted with chronic gonorrhea.

The charges excepted to and two of the requests are so closely connected that they will be considered together. The portion of the charge excepted to constitutes a part only of an entire sentence in the charge of the court. The complete sentence is as follows: "Evidence of prior unchastity of the plaintiff's daughter is competent both to show that the sexual intercourse was without enticement, artifice, persuasion, or solicitation which overcame her

reluctance and scruples, and also in mitigation of damages." And then comes the part excepted to: "But proof of former unchastity is of itself not a defense or bar to any action of this kind."

The following are two of the defendant's requests to charge:—

"1. Before you can find a verdict for the defendant in this case, you must first find from the evidence that the plaintiff's daughter was at and prior to the alleged seduction a chaste female, and that the defendant seduced her, and had illegal sexual intercourse with her."

"5. Proof that the defendant and plaintiff's daughter had illicit sexual intercourse with each other does not of itself show that the plaintiff's daughter was seduced by the defendant; but before you can find such seduction, you must first find from the evidence that the plaintiff's daughter was chaste, and that she was overcome by the defendant by the use of some artifice or promise, which by reason of her relations with and confidence in the defendant she, although a moral and chaste female, could not resist."

1. Under the particular facts disclosed by this record, that part of the charge of the court which was excepted to had a tendency to mislead the jury. They might have well understood from that language that no difference to what extent or how often the plaintiff's daughter may have engaged in acts of lewdness and lasciviousness with miscellaneous men, and continuing up to the very event complained of, still her seduction by the defendant was possible, and the jury could only consider such acts in mitigation or to corroborate the defendant's denial. This, I think, for reasons presently to be noticed, was going too far. There is no doubt that a woman may be guilty of unchastity, and then reform and lead a virtuous life. In such case, her seduction ought to be visited with such

damages as a jury would think, in view of all the facts and circumstances, the defendant ought to pay; but to justify a recovery there must be a reformation.   In other words, the female must have honestly abandoned and ceased her lewd conduct for a sufficient length of time before the act complained of, as to induce the jury, as reasonable men, to believe the reformation was real, and not feigned.   If the court had added to the charge a proviso to the effect that for a reasonable time before the alleged seduction the plaintiff's daughter had abandoned and ceased her unchastity, if she had been unchaste, so as to satisfy the jury, at the time of the alleged seduction, she was leading a virtuous life, such instruction would have left the jury free to have instituted the necessary inquiry on that subject.

2.  By the two requests which were refused, counsel for appellant seek to present the question whether or not a woman who is without virtue and unchaste can be the subject of seduction within the meaning of the code.   The action for the injury and wrong done to a father, mother, or guardian by the seduction of a daughter or ward is given by Hill's Code, section 35, as follows:—

"Sec. 35.   A father, or in case of death or desertion of his family, the mother, may maintain an action as plaintiff for the seduction of a daughter, and the guardian for the seduction of a ward, though the daughter or ward be not living with or in the service of the plaintiff at the time of the seduction or afterwards, and there be no loss of service."

This section has entirely changed the character of the action.   Under the law as it stood formerly, loss of service was the gist of the action, without which it could not be sustained.   The value of the services rendered was immaterial, but some service, or a legal duty to render the same, must have been alleged and proven, and then the

XVII. OR.—16

jury was directed to assess damages for the loss of such service as well as for the dishonor brought upon the plaintiff's family by reason of the seduction of his daughter, etc.; but the damages in fact were assessed for the seduction.

This anomalous state of the law was sought to be remedied by the section above quoted, so that there need be now no loss of service by the parent or guardian, or liability to render service by the daughter or ward. Special damages, such as expenses incurred for medical treatment and the like, are still recoverable, but they must be specially alleged in the complaint.

But the question which presents the greatest difficulty is, What is meant by the word "seduction" in this section? Lexicographers are not agreed as to its meaning. Webster defines the word "seduce": "To draw aside from the path of rectitude and duty in a manner; to entice to evil; to lead astray; to tempt and lead to iniquity; to corrupt; to deprave; *to induce to surrender chastity.*" And the word "seduction" thus: "The act of seducing or of enticing from the path of duty; specifically, the *act or crime of persuading a female to surrender her chastity.*" Burrill's Law Dictionary thus defines it: "The debauching of a woman; the offense of inducing a woman to consent to unlawful intercourse," — omitting altogether the elements of chastity.

Under Webster's definition, the female must have been persuaded to surrender *her chastity;* under Burrill's, only to consent to *unlawful intercourse.*

Courts have been more inclined to follow Webster's definition than those given by the legal lexicographers.

In *Croghan* v. *State*, 22 Wis. 444, the word "seduction" is thus defined: "The word 'seduction,' when applied to the conduct of a man toward a female, is generally understood to mean the use of some influence, promise, arts, or means

on his part by which he induces the woman to surrender her *chastity* and *virtue* to his embraces."

So this court in *Parker* v. *Monteith*, 7 Or. 277, approved of the following definition of "seduction": "A promise of marriage by the defendant to Flora Parker, or any influence exerted by him over her, such as gaining her affections, or acquiring influence over her, or persuading her, which had a tendency to *draw her from the path of virtue*, would be sufficient, if followed by illicit intercourse, to constitute seduction, if the jury believe that she was thereby constrained to yield to his desire."

And this court, in *Breon* v. *Henkle*, 14 Or. 494, construing section 36, Hill's Code, which gives a right of action to a female who is unmarried and over twenty-one years of age, and who has been seduced, said: "The section of the statute which gives the right of action only provides that the plaintiff may recover such damages as may be assessed in her favor. I suppose this should be construed to mean legitimate damages, and the case being *sui generis*, it leaves a wide scope for construction. If the section intends that such woman in any case of illicit sexual intercourse resulting in pregnancy can maintain an action against her paramour, the recovery should be confined to the actual pecuniary loss sustained. Such a rule would not be unjust to the man in any case. It would only be a fair apportionment of a burden arising from a mutual wrong. If, however, it is intended to include in all cases the loss of character and reputation of the woman, and the damages be estimated by a jury of men, it would operate oppressively and perniciously. It would tend to the demoralization of the female sex; would be a reward for unchastity, which a class of adventuresses would be swift to profit by. If, on the other hand, the said section intends to enable an unfortunate woman, whose love and confidence have been gained, and her consent to the

sexual intercourse been secured through hypocrisy and artifice, to maintain an action for compensation in damages, she should not only recover for the pecuniary loss suffered, but also on account of her mental anguish and loss of reputation and character. If such construction of the section of the statute in question is, however, to obtain, there should be something more than a mere 'reluctance' upon her part to commit the act. It should be a reluctance that enticements and persuasions could not overcome, without the presence of some other potent influence; such a state of facts should be proved as would convince a fair-minded person that she had been deceived and deluded, and that her submission was in consequence of such deception and delusion. To term coaxing and persuasion of a woman to yield to the lecherous embraces of a man 'a seduction by artifice' would be a misnomer; a *virtuous-minded woman* would promptly spurn such approaches with indignation. And if the statute is to receive the construction last indicated,—if a woman of mature years is allowed to recover damages for the loss of reputation and character in consequence of having permitted a man to have carnal knowledge of her, —she should be required to show that she had been prudent; had exercised at least ordinary discretion; had *sacrificed her virtue* through an influence that was calculated to lead astray *an honest-minded female.* An action for obtaining property fraudulently cannot be maintained without proof of facts calculated to deceive a person of ordinary prudence; and how can a female a long way beyond girlhood claim to have been defrauded of that which every womanly instinct of her nature prompts her to set the highest value upon, by 'flattery, false promises, artifice, urgent importunity, based upon professions of attachment,' unless they are of such a character as are calcu-

lated to mislead an ordinarily prudent and virtuous-minded woman." (*Bell* v. *Rinker*, 29 Ind. 267.)

So far, those extracts, I think, tend to show that, in construing the statute under consideration, to constitute seduction, something more is necessary than sexual intercourse, induced by persuasions, urgent importunities, etc., followed by pregnancy; but just where the dividing line is to be drawn seems difficult. If the word "chaste," in this connection, is used in the sense of never having submitted to illicit sexual intercourse, the requirement is greater than the law exacts; because it has been frequently determined that a woman may be seduced who had previously at some period of her life been unchaste.

*Baird* v. *Boehner*, 33 N. W. Rep. 694, is a case where the plaintiff had formed an illicit connection with the defendant, which continued for some time, and then the plaintiff concluded she would reform, and for that purpose went from the state of Iowa to Kansas, where she remained about one year, and then returned to Iowa, where the alleged seduction took place. The evidence tended to show that during her absence she led a virtuous life, but upon her return to Iowa, she again submitted to the defendant, and the court held for the purposes of the opinion that she was of chaste character after her return from Kansas, but the plaintiff failed on other grounds.

So in *Smith* v. *Milburn*, 17 Iowa, 30, it appeared that the plaintiff, who was suing for her own seduction, but had reformed and was then seduced, might maintain the action, and her previous unchastity would effect only the measure of damages; and *Love* v. *Masoner*, 6 Baxt. 24, is to the same effect.

And a number of cases hold that in an action by the father of a seduced female, her character for chastity is in issue, and prior unchastity may be proved, not only to

corroborate the defendant, where he denies the seduction, but also in mitigation of damages. (*Hogan* v. *Cregan*, 6 Rob. (N. Y.) 138; *Shattuck* v. *Myers*, 13 Ind. 46; *White* v. *Murtland*, 71 Ill. 250; *Drish* v. *Davenport*, 2 Stew. 266.)

But these authorities leave the main question untouched, which counsel for appellant seek to present on this appeal, and that is, What is the legal effect of lewd practices and habits of the female alleged to have been seduced at and immediately before such alleged seduction? Do they only mitigate the damages, and corroborate the defendant's denial of the seduction? or do they go further, and defeat the plaintiff's right of recovery entirely, if the jury are satisfied that the female alleged to have been seduced was in the habit of seeking opportunities for criminal indulgence, not only with the defendant, but with various other persons, about the time of such alleged seduction? In other words, can a woman who engages in criminal indulgence with her male acquaintances as opportunities present themselves, and who will make opportunities for that purpose, be said to be seduced within the true intent and meaning of the statute? Is such a woman drawn aside from the path of virtue and overreached by the artifice, deception, and cunning of the seducer? Unless these questions can be answered in the affirmative, it is not perceived that she was "seduced." To hold otherwise would be to break down all distinctions between the virtuous and vicious, and to place the common bawd on the same plane with the virtuous woman whose life was pure, and whose confidence had been betrayed by the heartless libertine.

Instruction No. 5, while it is subject to some verbal criticism, contained a correct legal proposition, as applied to the facts of this case, and the same ought to have been given to the jury.

No. 1 was misleading and properly refused, for the

reason that it required the jury to find "that the plaintiff's daughter was at and *prior to the alleged seduction* a chaste female," etc. At some period of her life prior to the alleged seduction she may have been unchaste and then reformed. But this instruction would allow no reformation. It has already been shown that this is not the law.

3. The defendant's counsel asked one other instruction, as follows: "The fact that the plaintiff's daughter was suffering at the time of her alleged seduction with a venereal disease, if you find such fact to exist, would, if not explained, in itself be sufficient evidence of unchastity to prevent a recovery in this action." This instruction was properly refused, for the reason that it invades the province of the jury. It is the right of the jury, and not the court, to determine the effect of evidence, unless in particular cases where its effect is declared by the code.

It follows from what has been said that the judgment must be reversed, and the cause remanded for a new trial.