MARY E. DWIRE, Appellant, v. L. C. STEARNS, Respondent.

(172 N. W. 69.)

**Seduction — chastity of daughter presumed.**

1. In an action for the violation of the personal relation brought by the parent, for the debauching of her daughter, aged seventeen years, the chastity of the daughter is presumed.

---

Note.—On right of action for seduction independently of loss of services, see note in L.R.A.1917E, 758.

**Seduction — civil liability.**

2. In such action, whether the wrong be termed seduction or unlawful enticement, it is the act of securing or procuring the debauching of the daughter, and the civil liability therefor is not prescribed by the statutory definition of criminal seduction.

**Seduction — loss of service — recovery of damages — exemplary damages.**

3. In such action, when actual or constructive loss of the service has been established under the legal fiction pursuant to which such action is maintained, damages may be recovered for all that the parent has suffered through the ruin of the daughter, and the disgrace occasioned, including exemplary damages.

Opinion filed March 6, 1919.   Rehearing denied April 15, 1919.

Action for damages for debauching the daughter of the plaintiff, District Court, Ward County, *Leighton,* J.

From the judgment entered upon an order dismissing the action when plaintiff rested, the plaintiff appeals.

Reversed and new trial granted.

*Fisk & Murphy,* for appellant.

*Palda & Aaker* and *Greenleaf, Wooledge & Lesk,* for respondent.

BRONSON, J.   This is a civil action for damages for violation of a personal relation.   The record shows evidence of the following facts: The plaintiff is a widow with four minor children.   Prior to and at the time of the alleged offense she operated a rooming and apartment house in the city of Minot.   The defendant is a married man, thirty-eight years old, connected with the Minot Auto Company, and possessed of considerable means.   Helen, the daughter of the plaintiff, from January 1, 1917, to April 13, 1917, was living with the plaintiff, helping and assisting her in housework in the operation of such rooming and apartment house and also attending business college in Minot.   On the evening of April 13, 1917, Helen, then aged seventeen years, met the defendant in front of the office of the Auto Company. With her in an automobile there was another man and woman.   Theretofore, she and the other two had been drinking some beer and wine. The defendant joined the party, and with the car they all proceeded

to a disorderly house in Minot, where they procured one and a half dozen bottles of beer. Thence they drove to the town of Burlington. They went to a room there over a barber shop and pool room. The other couple got warm and left to attend a dance at Des Lacs. Helen and the defendant remained in this room alone for some two hours. During this time the defendant had sexual intercourse with the girl twice at his solicitation. Afterwards the other couple returned and the entire party returned to Minot and proceeded again to the same disorderly house. During this time they were drinking this beer, the defendant, however, not participating in the drinking. At this disorderly house some more drinks were had. It was about 4 o'clock in the morning. The girl mentioned that she was afraid to go home. The defendant and the girl talked about it. The girl stated that she thought she would leave town. The defendant then gave her $5 before she started to go. The girl did leave town, going first to Devils Lake and thence to St. Paul. These proceedings took place without the knowledge or consent of the mother, the plaintiff. The girl disappeared that evening and she thought that she must have gone with one of her girl friends. The mother proceeded thereafter to institute a search for the girl. She hired detectives to look for her; she had her other children do likewise. Some five weeks thereafter she was located and found in Minneapolis. In the meantime the girl, at Minneapolis, had seen the wife of the defendant and had given to her a written letter or statement of some kind concerning her relation with the defendant for which she received $10 and along about this time, also, she met in conference with the attorney for the defendant and received $500 in cash, paid by the defendant through his attorney upon the understanding that she would not come back to Minot.

Upon these acts of the defendant the complaint is based, and damages claimed in the sum of $10,000 predicated upon the loss of services, the society and comfort of her daughter, and the shame, humiliation, and disgrace occasioned to her, and also upon the expenses incurred by reason thereof.

When the plaintiff rested, the defendant moved for dismissal principally upon the following grounds: That the plaintiff had failed to prove any loss of services or that she had suffered any injury; that she

had failed to prove that the health of the girl was in any way impaired, or that she was incapacitated from rendering any services to plaintiff; that she had failed to prove that the girl was chaste and virtuous, or that the sexual intercourse was effected through force, violence, or any artifice or pretense practised, or that the act was without the connivance and consent of the girl. The trial court granted this motion. From the judgment entered upon its order so doing, the plaintiff has appealed.

With regard to this action of the trial court, the learned counsel for the plaintiff, a former chief justice of this court, stated in the brief and before this court as follows: "In the light of the undisputed evidence and the well-settled rules of law as established by all of the courts of the country, the ruling of the trial court granting such motion is, to say the least, most remarkable and we very much doubt if its parallel can be found in any reported case."

To show the pertinency of that remark and the application of such motion so made and granted, this court has stated more fully than usually necessary the substance of the evidence adduced at the trial.

With this observation so made by appellant's counsel, we are very much inclined to agree.

Upon this record, which at least for purposes of the motion involved and the order made thereupon must be taken to be true, we can find no justification in law or in good morals for the entertaining of such motion upon any such grounds. Law prescribes a rule of conduct. It should and does exemplify good morals.

There are just two propositions that require the consideration of this court upon the record: First, the civil liability of the defendant to the plaintiff for acts of this character; and, second, the rule of damages applicable thereto.

Section 4535, Comp. Laws 1913, so far as material provides: "The rights of personal relation forbid: The abduction or enticement of a child from a parent: The seduction of a daughter."

Our statutes have designated as crimes various acts of illicit sexual intercourse. Section 9579, Comp. Laws 1913, provides that adultery is the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife. Section 9563, Comp.

Laws 1913, (as amended by chap. 193, Laws 1917) defines rape, and particularly provides, that it is, among other things, accomplished by the act of sexual intercourse with a female under eighteen years of age, not the wife of the prepetrator. Chap. 159, Laws 1915, also provides a criminal penalty for voluntary sexual intercourse between male and female, not married, terming the same fornication.

Under the statutes the act of the defendant, criminally, if true under the evidence, is rape.

The fact that the statute has variously denominated acts of illicit intercourse and termed the same otherwise than seduction, and limited seduction criminally to acts of illicit connection made under promise of marriage, does not change seduction, as a civil wrong, or tort. Hein v. Holdridge, 78 Minn. 471, 81 N. W. 522.

Seduction as a civil injury may be generally defined as the act of a man in inducing a virtuous woman to commit unlawful sexual intercourse with him. See note in 76 Am. St. Rep. 659; Patterson v. Hayden, 17 Or. 238, 3 L.R.A. 529, 11 Am. St. Rep. 822, 21 Pac. 129. It is true that a distinction is to be drawn between mere illicit intercourse and acts of seduction. Bradshaw v. Jones, 103 Tenn. 331, 76 Am. St. Rep. 655, 52 S. W. 1072.

In the case at bar, the evidence is amply sufficient to present a question of fact to the jury, either concerning the enticement of the daughter, or concerning her seduction. It is quite clear from the testimony that the intercourse in question, not only was unlawful and illicit, but also that the defendant in his position with relation to the girl could well be said to have induced or enticed her to commit the act. The contention of the respondent that there is no evidence of the previous chastity of the girl is wholly without merit. The idea that a presumption must be indulged in that a girl of that age is not virtuous and chaste shocks both the sense of justice and good morals. In such actions the presumption of chastity should and it does obtain. See note in Ann. Cas. 1916A, 200.

Concerning the rule of damages, the necessity of showing actual loss of services when the daughter is seduced is largely disappearing, and it is wholly proper, right, and just that it should disappear, except as a legal fiction. The thought that the wrong perpetrated by the

seduction of the daughter must be measured by the actual loss of serv-
ices sustained by a parent, and must so be compensated, shocks the
finer senses of humanity and morality. We do not hesitate to an-
nounce and adopt the rule of damages generally stated, namely, that
when the technical basis of actual or constructive loss of service has
once been established, damages may be recovered for all that the parent
may suffer by the ruin of the daughter, and the disgrace to the family.
See note in L.R.A.1917E, 758. This includes not only loss of services
but also the dishonor and mental suffering brought upon the house-
hold; it includes the natural loss and expenses occasioned thereby, as
well as exemplary damages for the wilful wrong done. Ingwaldson v.
Skrivseth, 7 N. D. 388, 75 N. W. 772; Hein v. Holdridge, 78 Minn.
470, 81 N. W. 522; Russell v. Chambers, 31 Minn. 54, 16 N. W. 458;
Fox v. Stevens, 13 Minn. 272, Gil. 252. See note in 52 L.R.A.(N.S.)
85. Not only constructive but also actual loss of services is estab-
lished in the record of this action. It therefore follows that the trial
court erred in dismissing the action; the order of the trial court is
reversed, and a new trial granted, with costs to the appellant.

ROBINSON, BIRDZELL and GRACE, JJ., concur.

CHRISTIANSON Ch. J., concurs in the result only.

PER CURIAM: In the petition for rehearing, respondent's counsel
objects to the statement contained in the opinion with reference to
the payment of $500 to Helen Dwire. The statement is: "She met
in conference with the attorney for the defendant and received $500
in cash, paid by the defendant through his attorney, upon the under-
standing that she would not come back to Minot."

This statement is merely a statement of a possible fact, of which
there is some evidence. It is not a statement of an ultimate fact; and
it is based upon the testimony of the girl in the shape of a deposition.
The testimony is:

"Q. At that time what was said by Judge Palda to you with refer-
ence to not coming to Minot and appear at this trial? A. He said he
did not think I should come back to Minot and I told him I could not

live in Minneapolis for nothing, the way things were, and Mr. Palda got me $500 from Mr. Stearns.

"Q. Did he give you $500 in cash?  A. Yes.

"Q. Did he make any statement to you that if you came back you would get in trouble?  A. He said I could come back to Minot if I wanted to.

"Q. Did he say if you did come you would get in trouble?  A. No.

"Q. He gave you $500 with the understanding that you would not come back to Minot?  A. Yes.

"Q. Was there any statement in substance that your mother's case would not amount to anything if you did not come back?  A. Mr. Palda said at one time my mother offered to settle for $1,500.

"Q. That is all that was said?  A. Yes."

Upon cross examination, witness testified:

"Q. You were told specifically by me (Judge Palda) that it did not make any difference whether you came back or not, that it was up to you, didn't I?  A. You told me you can come back to Minot if you want to."

On re-direct examination:

"Q. At the time you talked with Judge Palda and he gave you this $500, he gave you to understand he was there representing the defendant, Mr. Stearns?  A. Yes, sir."

Inasmuch as the statement in the opinion might be misconstrued as the statement of an ultimate fact which, if true, would reflect seriously upon a member of the bar, it is thought proper to state the exact condition of the evidence in connection therewith.

All concur in the above expression except BRONSON, J.