B. E. Ingwaldson *as Trustee vs.* J. I. Skrivseth, *et al.*

Opinion filed April 28th, 1898.

**Valid Consideration for Mortgage Must be Proven.**

> Where a party holds a conveyance as security, he has no standing in a court of equity to ask that a subsequent deed made by his grantor be set aside as a fraud upon his rights, until he shows the existence of some valid claim for which his conveyance stands as security.

**Father Can Maintain Action for Seduction of Minor Child.**

> In this state the father has a cause of action for the seduction of his minor daughter, and this is true when such daughter lives in the family of a third person, and receives and controls her own wages; it not appearing that the father has ever relinquished his legal right to demand her services.

**Unmarried Woman Has No Action for Her Own Seduction.**

> An unmarried female has, in this state, no cause of action for her own seduction, but she has a cause of action against the father of her bastard child to compel him to contribute to the support of such child, and this claim she can settle and adjust so far as she herself is concerned.

**Proof of Fraud Insufficient.**

> The evidence to support the allegations of fraud and undue influence in procuring such settlement examined, and *held* insufficient.

Appeal from District Court, Traill County; *Fisk*, J.

Action by B. E. Ingwaldson, as trustee for Paul Olson and Ovedia Olson, against J. L. Skrivseth and Bertha Skrivseth, to set aside a deed. Defendants had judgment, and plaintiff appeals.

Affirmed.

*M. A. Hildreth* and *B. E. Ingwaldson*, for appellant.

*Carmody & Leslie*, for respondents.

Bartholomew, J. The plaintiff, Ingwaldson, as trustee for Paul and Ovedia Olson, brings this action to set aside a deed executed by the defendant J. L. Skrivseth to the defendant Bertha Skrivseth, covering certain property in the City of Hillsboro, in Traill County. The defendants are husband and wife. Paul Olson is the father of Ovedia Olson. The very voluminous pleadings in this case may be thus summarized: The complaint alleges that on September 30, 1896, a cause of action had accrued

in favor of Paul Olson against J. L. Skrivseth, and on the same date a cause of action had accrued and was accruing in favor of Ovedia Olson against the same party. That plaintiff, Ingwaldson, was the attorney for both Paul and Ovedia Olson. That the action in favor of Paul Olson was actually commenced on that day by service of summons upon said J. L. Skrivseth. Both of said causes of action were based upon the fact that said Ovedia Olson had been seduced by said J. L. Skrivseth and was then pregnant by said party. On said September 30th, said Ingwaldson, as attorney for said parties, entered into an agreement with said J. L. Skrivseth for the settlement of all claims growing out of such seduction, on the part of both father and daughter. That the total amount of damages accruing to said parties, was fixed at the sum of $2,500, and that said J. L. Skrivseth executed to said Ingwaldson, as trustee for said Olsons, a conveyance, in form a warranty deed, of the property in controversy, which deed was to be held by said trustee as security for the payment of said amount; and said complaint continued: "In case of nonpayment thereof, or attempt by the said defendant, J. L. Skriveth, or any one for him, to avoid such payment thereof, such warranty deed was to be placed of record, and should then and was to guaranty the payment of such sum or sums as the said Paul Olson and Ovedia Olson might be found entitled to in said several causes of action against defendant, J. L. Skrivseth." The ownership of said property by J. L. Skrivseth was alleged, and it was declared that it was expressly agreed and understood that, in case said Skrivseth attempted to avoid such settlement or hinder or delay such payment, then such deed should become an absolute conveyance for the benefit of said Paul and Ovedia, "and be applied in payment of any recovery they might be found entitled to therein." It is further alleged that five days thereafter said J. L. Skrivseth executed a deed of said premises to the defendant Bertha Skrivseth, but that said deed was without consideration, and was taken with full knowledge of the prior deed to Ingwaldson as trustee, and that it was given and received for the sole purpose

of defeating the claims of the said Paul and Ovedia Olson. It may be here stated that the deed to Bertha was filed for record prior to the filing of the deed to Ingwaldson. It also appears from the complaint and the evidence that the action brought by Paul Olson was speedily pressed to judgment. No appearance was made by the defendant. The evidence was submitted on November 4, 1896, and judgment for plaintiff rendered November 20, 1896, for the sum of $700, and costs, and that judgment had been fully paid before this action was tried. Bertha Skrivseth alone answers. She denies the existence of any claims on the part of Paul or Ovedia Olson against J. L. Skrivseth, but admits the making of the deed to Ingwaldson as trustee, and claims that such deed was obtained by fraud and duress, and was void. She admits the execution of the deed to her, and alleges that it was given for valuable consideration, and was received by her without any knowledge of the prior deed to Ingwaldson, and without any knowledge that Paul Olson had brought an action against J. L. Skrivseth, and without any intent to hinder, delay, or defraud any creditor. Further, she alleges that on the 15th day of October, 1896, while not admitting the existence of any valid claim, yet, to avoid all scandal and litigation, she settled with Ovedia Olson for all claims of every name and nature, growing out of said alleged seduction, for the sum of $650, then paid by her to said Ovedia Olson, and as evidence of said settlement and payment the said Ovedia then and there executed and delivered to her a receipt and release in the following language: "Hillsboro, N. D., Oct. 15th, 1896. For $650.00 paid by Mrs. Bertha Skrivseth this day, I hereby acknowledge payment in full of all damages to me growing out of J. L. Skrivseth being the father of my unborn child. And I for said consideration agree to care for and support said child, if born, releasing said J. L. Skrivseth from all liabilities to me or any one else; and I hereby agree that said money shall be put in the hands of H. J. Nyhus, as trustee, to be paid out to me for the support of myself and child, according to the judgment of said Nyhus. Ovedia Olson.

Signed: H. J. Nyhus. J. Lonne. I have received the sum above mentioned. 10–15, 96. [Signed] H. J. Nyhus, Trustee." That at the time such payment was made said Ovedia executed and delivered to said defendant a quit-claim deed for said premises, and promised that the plaintiff, Ingwaldson, should also execute to said defendant a quit-claim deed. That at the time said payment was made said defendant did not know of the pendency of the action in favor of Paul Olson against J. L. Skrivseth, but supposed that such payment covered all claims arising from the alleged seduction. The answer also sets forth the recovery of the judgment by Paul Olson and its payment. There was a reply to this answer, admitting the payment of the Paul Olson judgment, and admitting the execution by Ovedia Olson of the receipt and release set forth in the answer, but claiming that the same was procured by fraud and undue influence exercised over her by Rev. J. Lonne and one H. J. Nyhus, both of whom were at the time, but unknown to said Ovedia, acting as the agents of Bertha Skrivseth; that the same was procured without the knowledge of the plaintiff, Ingwaldson, the attorney for said Ovedia Olson; and that as soon as he obtained knowledge of the same, and on December 22, 1896, the said Ovedia Olson gave notice of a rescission of said agreement, pursuant to section 3932, Revised Codes, and offered to return everything of value that she had received under such settlement. It was also alleged that Ovedia had never received any of the money so left with Nyhus as her trustee.

In the view that we take of this case, there are some questions raised on the record that it will not be necessary to discuss. The legality of the transfer from J. L. Skrivseth to Bertha Skrivseth becomes material only after the plaintiffs have shown that there exists some claim in their favor, or in favor of one of them, that ought to be enforced against the property as the property of J. L. Skrivseth. Concerning the conveyance of September 30, 1896, made by J. L. Skrivseth to Ingwaldson as trustee, we have to say that we regard it as security only, although in form a deed

absolute. The trial court expressly so found, and, taking the complaint and testimony together, we think the finding correct, except upon a single contingency, and that was this: In case the grantee should sell the property to a third party, and pay the grantor Skrivseth $1,500 (Ingwaldson says $1,200,) then the conveyance should be placed upon record and become absolute. The property was valued by the witnesses from $2,500 to $4,000. But no such sale was ever made. Treating the conveyance, then, as security only, we must ascertain for what it stood as security. No note was given or other evidence of indebtedness. If all damages arising from the seduction were liquidated at $2,500, and Skrivseth promised absolutely to pay that sum, we do not understand why the attorney did not take some evidence of indebtedness, because the original claim arising from the seduction was merged in the settlement, and thereafter the only cause of action left was the express promise to pay, and it was a violation of the terms of the settlement for Paul Olson to press to judgment his action based upon the original seduction, wherein he claimed damages to the extent of $10,000. These considerations force us to believe that the conveyance stood as security for such amounts as Paul Olson and Ovedia Olson might recover against said Skrivseth by reason of any matters growing out of such seduction. Of course, in case of a sale of the property, as already indicated, it would not have been necessary to establish their claims in court. But we are clear that it was not the intention to abandon the original cause of action until the actual payment of the damages thereon was received. Have those damages been adjusted and paid? If so, plaintiff's have no further interest in the property.

The evidence shows that Ovedia Olson attained her majority on May 31, 1896, and she was seduced and became pregnant at some prior time during that month. She was living in the family of the defendants, and had been so living for six or eight years. At the time she was receiving regular wages from the defendants as an assistant in a photograph gallery. But she was not of age, and there is nothing in the case to show that her father had ever

parted with his legal right to demand her services. Hence he could maintain an action for the seduction, and recover full damages not merely for the loss of services, but for the dishonor, disgrace, and mental suffering brought upon the household. *Hudkins* v. *Haskins*, 22 W. Va. 645; *Simpson* v. *Grayson*, 54. Ark. 404, 16 S. W. Rep. 4; *Bartly* v. *Richtmyer*, 53 Am. Dec. 338; *Ellington* v. *Ellington*, 47 Miss. 329; *Kennedy* v. *Shea*, 110 Mass. 147; *Clinton* v. *York*, 26 Me. 167; *White* v. *Murtland*, 71 Ill. 250. At common law, the female seduced has no cause of action for her own seduction. *Watson* v. *Watson*, 49 Mich. 540, 14 N. W. Rep. 489; *Woodward* v. *Anderson*, 9 Bush. 624; *Hamilton* v. *Lomax*, 26 Barb. 615; *Paul* v. *Frazier*, 3 Mass. 71. Nor have we in this state any statute giving the woman a right of action in such cases.

The father, Paul Olson, having prosecuted his cause of action to judgment, and such judgment having been fully paid, there no longer exists any claim for the seduction proper in favor of either of the plaintiffs. What claim, if any, existed in favor of Ovedia Olson? That her seducer was under a moral obligation to her to support the child which was the fruit of such seduction cannot be doubted, and any express promise to pay a liquidated amount based upon such moral obligation would be enforced by a court. But as we have stated, in our judgment, there was no promise to pay any specific amount. However, should we adopt the view urged by plaintiff's, that there was a specific promise to pay the sum of $2,500, in settlement of all claims growing out of such seduction, that fact would not aid plaintiffs' case at this stage, because, in any event, that was an aggregate sum that should satisfy all claims, and was not a specified amount for any one claim; and as Paul Olson, one of the parties for whose benefit the promise was made, if it was made, refused to stand upon such promise as to his cause of action, it is self-evident that the other party beneficially interested can claim nothing under such promise. But under our bastardy act (Ch. 5, Code Cr. Proc.) an unmarried female may enter complaint against the father of her

bastard child, and obtain a judgment against him for such sum as may be necessary, with the assistance of the mother, to support such child until it reaches an age to support itself. This statute gave Ovedia Olson a legal enforceable claim against J. L. Skrivseth,—a claim that she might prosecute to judgment or might amicably adjust. It may be true that she could make no adjustment that would bind the county commissioners in case such child became a public charge, yet she could adjust and settle all claims upon J. L. Skrivseth so far as she was concerned. It was precisely this claim that she did adjust, as shown by the terms of the receipt and release executed by her to Bertha Skrivseth; and this brings us to the last question in the case, and that is, was that receipt and release procured by fraud or undue influence?

We have all carefully studied the evidence upon this point, and we are clear and unanimous in the opinion that it was not. The circumstances leading up to the execution of that instrument may be briefly stated: Rev. J. Lonne was the pastor of the church at Hillsboro, of which J. L. Skrivseth and wife, Paul Olson and wife, and Ovedia Olson were all members. That he should desire to suppress, so far as he reasonably might, a scandal in his own church, and shield its members from unnecessary public disgrace, was at once natural and laudable, and he deserves commendation for his efforts in that line, rather than the aspersions heaped upon him by counsel. It seems that rumors of the scandal became rife at Hillsboro early in October, 1896. A few weeks prior thereto the Skrivseths had leased their property at that place, and moved to Fargo. On October 4th, Mrs. Skrivseth received a letter from Mrs. Lonne, in which reference was made to the rumors afloat. On October 5th, Rev. Lonne, went to Fargo, and talked first with Mrs. Skrivseth, and afterwards with Mr. Skrivseth, concerning the reports. He swears that at that time he knew nothing of the conveyance to Ingwaldson. Bertha Skrivseth swears that she knew nothing about it. By reason of the charges made against her husband, Mrs. Skrivseth demanded,

that he deed to her the Hillsboro property, in which she already claimed a one-half interest. The deed was executed, and the next day Skrivseth left Fargo, and went to the Pacific coast, leaving Mrs. Skrivseth and their three children in Fargo. As already stated, very soon after the deed to Mrs. Skrivseth was filed for record, Ingwaldson filed the conveyance to him, and of course its existence then became a matter of public notoriety. On October 12th, Rev. Lonne visited Ovedia Olson at her father's house. He saw her alone. It is claimed by plaintiff that he went as the agent of Bertha Skrivseth. There is no warrant for the claim in the testimony. He evidently went as the friend and pastor of Ovedia, and with a desire to avoid public scandal that must reflect upon his church. He had a full talk with Ovedia. He testifies that he then learned for the first time that Ingwaldson was acting as attorney for her father in the matter, but did not learn and did not know that he was also acting as attorney for Ovedia. In that conversation he pointed out the disgrace and notoriety that would attend a public trial. Ovedia declared that she would never go into court with the matter. He also told her, according to her testimony, that the Ingwaldson deed was worthless. This statement was perhaps scarcely warranted, but he spoke as the ordinary layman. It is clear from the evidence that in his view Bertha Skrivseth was a purchaser for value, without any knowledge of the existence of the deed to Ingwaldson, and her deed was first of record. There can be no doubt the statement was innocently made and in good faith, and plaintiff has so far been unsuccessful in showing that it was not strictly true. It cannot be doubted that the influence of Mr. Lonne over Ovedia was great, owing to the fact that he had been her pastor from her childhood. But we cannot say that this influence was not used in good faith, for her benefit, nor can we say that the advice given was not in fact for her best interests. In that conversation he urged that the matter be settled up, and finally suggested the sum of $500 as the amount to be paid, saying to her that he thought he could get that sum, and that he would try to get

more.   He testifies that Ovedia said she would be well satisfied
with such sum.   She says that she said she would take that if she
could not get more.   It is certain that Mr. Lonne left her with
the understanding on the part of both that she would release all
claims and settle everything, so far as she was concerned, for
$500, the money to be placed with H. J. Nyhus as trustee for
Ovedia.   Mr. Lonne then went to Fargo, and saw Mrs. Skrivseth,
and prevailed upon her to pay Ovedia $650.   The receipt was
drawn by an attorney in Fargo.   The money as we understand
the record, was raised by placing a mortgage on the Hillsboro
property.   On October 15th, Mr. Lonne again called upon
Ovedia, and asked her where she would go to sign the receipt
and execute a quit-claim deed of the property to Bertha Skrivseth.
After several places were suggested, she agreed to go to the
house of Mr. Lonne.   In the evening Mr. Lonne got H. J. Nyhus,
who was a notary public, to go to the house and take the
acknowledgment.   Mr. Nyhus, who is a banker and apparently a
very intelligent business man, testifies that at the time he fully
and carefully explained to Ovedia the exact nature of the papers
that she was signing, and that she expressed herself as well satis-
fied with the arrangement.   It is impossible, on this state of
facts, to hold that in making this settlement any such undue
influence was exercised over Ovedia Olson as will enable her to
avoid the settlement.   We have in this state a statutory definition
of "undue influence."   Section 3851, Revised Codes, reads:
"Undue influence consists:   (1)   In the use, by one in whom a
confidence is reposed by another or who holds a real or apparent
authority over him, of such confidence or authority for the pur-
pose of obtaining an unfair advantage over him.   (2) In taking
an unfair advantage of another's weakness of mind; or, (3) in
taking a grossly oppressive and unfair advantage of another's
necessities or distress."   By no unprejudiced construction of the
testimony can the facts of this case be brought under any subdi-
vision of said section.   The payment of the sum of $650 to the
trustee selected by Ovedia Olson, and for her use, and benefit,

extinguished all claims that she had against J. L. Skrivseth resulting from her seduction. As neither plaintiff has shown any claim against J. L. Skrivseth that could be satisfied from the real estate in controversy, if the same stood upon the record in the name of J. L. Skrivseth, it follows that the legality or illegality of the deed to Bertha Skrivseth becomes entirely immaterial.

The decree of the District Court is affirmed. All concur.