THEA BYE, Respondent, v. JOHN ISAACSON, Appellant.

(6 A.L.R. 1067, 173 N. W. 754.)

**Assault and battery — rape — damages.**

In this case actual rape by extreme force and violence is in no way essential to the plaintiff's cause of action. The complaint does charge, the evidence does show, and the jury has found, that the defendant grabbed and assaulted the plaintiff, pulled her onto the bed, and with a strong hand overcame her feeble power of will and resistance; that he thrust his seed upon her, caused her to suffer the pains of childbirth and to bring into the world a fatherless child without any support for it. That is a cause of action. The judgment of $1,500 is righteous, just, and moderate, and it is affirmed.

Opinion filed June 27, 1919.

Appeal from the District Court of Williams County, Honorable *Frank E. Fisk*, Judge.

Affirmed.

*Palmer, Craven, & Converse*, for appellant.

"This court has repeatedly stated what the law requires to establish a criminal charge of rape. That the rule laid down by the trial court in its charge to the jury is sustained by respectable authority is shown by the following authority:" Dean v. Raplee, 75 Hun, 389, 145 N. Y. 319, 39 N. E. 952.

"The learned trial judge charged the jury that plaintiff, in order to maintain the action, must satisfy them, from all the proofs, that if defendant had criminal connection with her it was accomplished with the intent on his part to effect his purpose in defiance of all resistance, and that it took place without her consent, against her will, and that she resisted to the best of her ability, under all the circumstances." Koening v. Nott, 2 Hilt (N. Y.) 323, 8 Abb. Pr. 384; Lind v. Closs, 88 Cal. 6, 25 Pac. 972; Champagne v. Hamey, 189 Mo. 709, 88 S. W. 92; Dickey v. McDonnell, 41 Ill. 62; Besler v. Stephani, 71 Ill. 400; Linville v. Green, 125 Mo. App. 289, 102 S. W. 67; Breon v. Hinkle, 14 Or. 494, 13 Pac. 289.

*McGee & Goss* and *Ray O. Miller*, for respondent.

Resistance in rape.

42 N. D.—27.

The rule in this state is settled in State v. Bancroft, 23 N. D. 449, and State v. Owens, 26 N. D. 337.

ROBINSON, J. This is an appeal from a judgment on a verdict in favor of the plaintiff for $1,500. It is a civil action to recover actual damages against the defendant on the ground that by force and a strong arm he assaulted her, pulled her onto a bed, overcame her feeble powers of resistance, forced his seed upon her, causing her to endure the pains of childbirth and to have a bastard child with no means of supporting it. At the time of the assault the plaintiff was a domestic in the employ of defendant, and to some extent she was under his care and guardianship. He was bound to protect her from abuse and outrage. On July 7, 1915, he grabbed her while she was clearing the table after supper, pulled her into the bedroom, held her over the arms, saying he wanted to have intercourse with her. She said she would not allow it. He lifted her onto the bed.

Q. Why did you not get away from him?
A. I could not, he held me so tight and strong.

Then he lifted her clothes with his hands and shoved his hand between her limbs. He used a hand and foot to pry her legs apart. She tried all she could to get away from him, but he forced himself onto her, forced his way and accomplished his purpose. She tried to get away from him, to wriggle away from him, but he held her so fast she could not. She tried to get loose, but she could not.

Q. What did you do while he was doing it?
A. I tried to get away from him.

Such is the testimony which the jury found to be true. There was no fondling, no love-making, no kissing and caressing. He just grabbed her, pulled her onto the bed, held her arms, and quickly accomplished his purpose. It was no Julia and Don Juan affair. It was simply an act of brutal force. A very whore would not consent to such treatment.

In such a case there is no reason why the court should apply the old rules of criminal prosecutions for rape. The question of rape or no rape is in no way material to this case. So far as the complaint

charges a common-law rape it may well be considered as an exaggera-
tion and as surplusage. Actual rape by force and violence is in no
manner essential to the plaintiff's cause of action. The complaint does
charge, and the evidence does show, and the jury has found that the
defendant grabbed and assaulted the plaintiff, pulled her onto the bed,
and with a strong hand overcame her feeble power of will and resistance;
that he thrust his seed upon her, caused her to suffer the pains of child-
birth and to bring into the world a fatherless child without any means
of supporting it. Manifestly the plaintiff has suffered a great wrong,
for which she has a legal and constitutional right to remedy by due
process of law. To throw her out of court and to deny her any remedy
because she did not resist with greater force, when all resistance in
her power was obviously futile, that were a travesty on justice and
a reproach to the courts. The verdict is manifestly righteous, just,
and moderate. It is only for actual damages occasioned by a great
wrong. Hence the judgment is affirmed.

GRACE, J. (specially concurring). An appeal from a judgment of
the district court of Williams county and from an order overruling
motion for verdict for defendant or for a new trial.

This action is one wherein the defendant seeks to recover from the
plaintiff damages upon three causes of action,—two of which are for
$5,000 each and one for $300. The plaintiff's two main causes of
action are based upon the claim that defendant damaged her in that
he caused her to be sick and in great distress of body and mind for a
period of nine months caused by the defendant wilfully and unlawfully
making a felonious assault upon the person of plaintiff against her will
and without her consent, and by the use and means of great force and
violence overcame her and her utmost resistance, and did unlawfully
rape, ravish, criminally know, and have unlawful sexual intercourse
with the plaintiff, whereby she became pregnant with child by the
defendant. The $300 is claimed for medical care, attention, and
medicines which plaintiff was required to purchase and use and for her
loss of time during her sickness. The answer is a general denial.

The material facts are as follows: The plaintiff was thirty-seven
years of age. She had been a married woman, but her husband had
died a considerable period of time prior to the time of the alleged acts

of rape. She was the mother of two children prior to the time of the alleged acts of rape in question. She claims to have been first raped in June, 1915, the date being indefinite. The second time on July 7th of the same year and again on July 11th, and on the 15th. The causes of action are based upon the acts of rape, if any, which were alleged to have occurred on the 7th and 11th of July. This case was twice tried to a jury. The plaintiff in the last trial recovered a judgment for $1,500. In this appeal the appellant makes numerous assignments of errors of law. In addition thereto he assigns errors alleged to have occurred by the court giving certain instructions, and finally assigns as error the insufficiency of the evidence to sustain the verdict. We have with great care examined each error of law assigned. They consist principally in motions to strike out certain evidence offered by plaintiff or in overruling defendant's objections to certain evidence offered. We are very clear that the court committed no reversible error in this regard. If there was any error it was without prejudice. The court gave the following instruction, which is assigned as error: "The plaintiff insists that she did not voluntarily consent, but that she resisted to the full extent of her ability, and only yielded when her will was overpowered, and that after she finally submitted to her fate it was against her will and for fear of more serious consequences." Certainly there was no error in giving this instruction. It merely set forth what plaintiff claimed, that is, that she did not voluntarily consent, that she resisted to the full extent of her ability, etc. The next instruction, the giving of which is assigned as error, is as follows: "If you believe from the evidence that at the time of the alleged rape other people were at the same time in the same house who might easily have heard her had she made an outcry, and that she in fact made no outcry at the time the defendant was attempting to have connection with her, then you should consider such fact in connection with the question of whether she did everything within her power under the circumstances to prevent the defendant from accomplishing his purpose." There was no error in giving this instruction. It was as favorable to defendant as to plaintiff. Whether the plaintiff resisted the defendant to the extent of her ability was a question of fact under all the evidence for the jury. Whether or not there were other people in the house at the time the alleged rape was committed upon plaintiff, she

should have cried aloud for assistance unless she was prevented from doing so by reason of threats of great bodily harm accompanied by apparent power of execution. The next assignment of error is as follows: "Evidence has been admitted touching alleged attempts of the defendant to have sexual intercourse with the plaintiff at times other than the times and instances set forth in plaintiff's first and second causes of action,—evidence of such attempts has been received and may be considered by you for the bearing it may have and the light it might throw upon your minds, and what did occur, if anything, at the alleged instances on July 7th and July 11th of alleged rape set forth in plaintiff's first and second causes of action." We think this instruction was not prejudicial. The only effect of it was to show that attempts by the defendant to have sexual intercourse with the plaintiff at other times would lend color to the probability that he committed the actions of rape complained of, which are alleged to have occurred on July 7th and 11th. In this particular kind of a case we are of the opinion that such testimony is admissible for that purpose. This action is a civil, and not a criminal, action, and for the purpose for which such evidence might be introduced it certainly was not prejudicial to give the instruction with the limitation of its application as defined by the court in the instruction. There was no error in any of the other instructions assigned as error.

The appellant has assigned as a reason for setting aside the verdict and reversing the judgment that the evidence is insufficient to sustain the verdict. To determine this question necessitates a thorough examination of the evidence. Before doing so, however, it is necessary to determine what the character of the evidence must be, and what degree of proof is required in order to hold the defendant in damages arising from the alleged rape of the plaintiff. It is well settled that if the defendant were being tried on a criminal charge of rape, before the jury could convict, it would be necessary for it to find that the act was committed by force and against the will of the plaintiff, and that she resisted the commission of the act to the extent of her ability, and that her resistance was overcome by force or violence, unless she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, or unless prevented from resisting by the administration to her of an intoxicating, narcotic,

or anesthetic agent. If the charge were a criminal one, all such matters would have to be proved by the state of competent evidence, beyond a reasonable doubt. In a civil action for damages for rape, the same character of proof is required as in the criminal case, but in a different degree; in other words, by a preponderance of the evidence only. If the plaintiff in this case has proved by a clear preponderance of the evidence that the defendant by force and violence actually raped her, and that she resisted such act to the extent of her ability; that her resistance was overcome, or if, by reason of any threats, she was put in great fear of immediate bodily injury, the means of executing the threat being accompanied by apparent power of execution,—then she has a cause of action against the defendant and the verdict should be sustained; otherwise, she would have no cause of action, and there would not be sufficient evidence to sustain the verdict.

We will first examine the alleged rape of July 11th. The only testimony to sustain plaintiff's claim is her own. Her testimony with reference to the alleged rape of July 11th is substantially as follows: "On the 11th of July, early Sunday morning, I didn't know before he was right there by my side, taking hold of me and shoved me over into the corner near the entrance to the basement. He shoved me against the door—side of the door—and wanted intercourse. Took up my clothes and put his organ into mine at that time. While he was doing that I tried to get away from him. He did get his organ into mine at that time, not very long, a few minutes. I said to him he shouldn't do it. I didn't make any noise. . I didn't dare to. · I was afraid of him since the first time, afraid he would hurt me in some way." This was substantially all the testimony on behalf of the plaintiff as to this act. That it is insufficient to prove rape must be conceded. There is practically no showing of force nor violence used by the defendant, and her testimony shows absolutely no effort to resist him. There is no evidence in the record that he had ever made any threat that he would do her any great bodily harm. There is no evidence that she made any outcry or called for any help or made any noise of any kind or character to attract anyone's attention that might have been in the house,—and as we shall see, there is other testimony showing there were other people in the house at that time. Testimony that she tried to get away from him is of no value. It is a mere conclusion. It shows

no act of resistance. There was nothing in her testimony with reference to this act that in any material degree tends to prove the commission of rape.

In connection with the alleged rape of July 11th, it is also well to examine the testimony of other witnesses. The defendant testified that, from the evening of the 9th until the evening of July 11th, he was absent from his dwelling in Tioga, and at no time during that period did he return until the evening of the 11th; that on the evening of July 9th he went out to Halvor Davidson's, a brother-in-law, and from there he went to the place of another brother-in-law; that on the evening of the 9th they stayed at Davidson's, and on the night of the 10th they stayed at Herfindahl's. His wife was with him these two nights. He denies all of the plaintiff's testimony with regard to the alleged rape of July 11th. Herfindahl, who lived 7½ miles south of Tioga, testified that he was home on July 10th and he first saw John Isaacson on the morning of the 10th, in the forenoon, at his place; that Mrs. Isaacson was with him; that they stayed there all that day and that night until the next morning about 10 o'clock on the 11th; that they were not absent from his place any time in the meantime; that they came to his place from Halvor Davidson's; that they said they were going from his place to Olaus Herfindahl's. Olaus Herfindahl testified that he lived 6 miles south of Tioga on a farm; that he is a brother of Mrs. Isaacson; that he saw Mr. Isaacson on the 11th of July at his place, and on the night of the 9th he talked with him over the phone from his place to Davidson's about 10 o'clock in the evening, but that he did not see him until the forenoon of the 11th; that they stayed until evening; that they came to his place from Julius Herfindahl's place; that from his place they went to town. Mrs. John Isaacson, wife of defendant, testified that on the evening of the 9th they were at Mr. Davidson's and remained there all that night; that her husband was with her and slept with her at Davidson's place; that on the forenoon of the 10th they left Davidson's place and got to Julius Herfindahl's place, got there in the forenoon and stayed there until the next forenoon on the 11th; that her husband was there during all the time that she was there; that on the night of the 11th her husband slept with her; that on the 11th they visited Olaus Herfindahl until the evening of the 11th and got back home on the evening of the 11th;

that she was positive that her husband was not in Tioga at any time from the time she left Tioga on the 9th of July until the evening of July 11th. This testimony is entirely undisputed; its truthfulness is in no manner questioned nor contradicted. It would appear to prove conclusively that John Isaacson was not home from the evening of July 9th until the evening of July 11th. If this is true, and we believe the testimony shows it to be, it would have been impossible for him to have committed the act of July 11th, as claimed by the plaintiff. We are of the opinion that there is no evidence showing that Isaacson did commit the alleged rape of July 11th.

We will now consider the alleged rape of July 7th. Plaintiff testifies substantially as follows: "On the 7th of July, 1915, he grabbed me while I was clearing the table after supper. He was then in the dining room, held me over the arms. He pulled me into the bedroom,—from the dining room into the front room and then the bedroom." He said he wanted intercourse with her. She said it was not permissible "either for you or me." He said, "People do a great deal that they are not permitted to do; you will have to live the best you can." It was not probable there was any light after this. She said she would not allow it. He lifted her into the bed, one arm around the shoulders and the other under the hips. She couldn't get away from him, he held her so tight and strong. He lifted the clothes with his hands and shoved his hand up between her limbs. He used a hand and foot to pry her legs apart; that she tried all she could to get away from him, but he forced himself to her, forced his way to accomplish it; that he succeeded in having intercourse with her; that she did not consent. She testified that she tried to get away from him, wriggle away from him, but that he held her so fast she couldn't. As to the length of time that she was trying to get away from him before he had sexual intercourse with her, she testified she was not quite sure, but that it must have been about five minutes, because he was so strong, it didn't help any the way she struggled. She testified that he did not say anything during that time. She testified that she was scared and that he finally succeeded in having intercourse with her; that it was only a few minutes, not very long. She also testified that during the act of intercourse she tried to get loose but couldn't; that the alleged rape hap-

pened between 6 and 7 in the evening. The following question was asked her:

Q. Do you know where the rest of the Isaacson family was at that time?

A. The oldest daughter hurried up and ate her meal and went to town, and the other children left also right away after they had eaten, and Mrs. Isaacson and the baby were not at home for supper.

She testified that she stayed at the house after that; and, asked why she stayed there, she answered, she was afraid he might do her some harm; besides, she had to work somewhere, had to live. The evidence given by the plaintiff tends to show there was some force used by the defendant upon this occasion, but we believe, however, there is practically no evidence on the part of plaintiff to show any resistance to any force used by the defendant. There is no showing of any outcry, the making of any noise to attract anyone's attention to her relief, though her own testimony tends to show some of the children were in the house at that time. There is absolutely no showing that any threats were made against her or that any threat of violence of great bodily harm was made against her person unless she consented to have sexual intercourse with the defendant, nor anything of this nature which might relieve the plaintiff from crying aloud for help, in some manner showing actual resistance. There is no testimony by her showing any facts which would put her in fear.

Mrs. Isaacson testified she knew Thea Bye about three years; that she began to work for them on the 7th of April; that she, Mrs. Isaacson, left for Minneapolis April 20th for medical treatment and an operation and remained there until June 30th; that the first place she went on a visit after she got home was at Watford, which was on the Fourth of July; her husband and daughter accompanied her; that they returned from Watford City on the evening of July 6th. That on the next day, July 7th, she was at home all that day; that she was positive of that; that Mrs. Bye's testimony that she went away from home that afternoon and was not at home at the supper meal is not so; that Mrs. Evjen was present at the supper meal; that there was not anybody else there, just the family; that on the evening of the 7th she occupied her usual bedroom in the house; that it was the bedroom on

the first floor; that after July 7th, the next time she left her home was on the evening of July 9th, as before stated; that on the evening of July 7th the condition of her bed from supper time until the time she went to that bed to sleep was that it was made up and in good shape; that she saw no evidence of the bed being mussed up at that time until they went to bed the evening of the 7th.

Bertha Evjen testified that she had lived in Tioga fourteen years; that she knew the Isaacson family; that she was no relation to them; that she was over at the Isaacson place on the evening of July 7th, that she went there about supper time; that she was present when the family was eating supper a little after 6; that Mrs. Isaacson was home that evening for supper; that she had supper that evening with the family; that the oldest daughter was home and she also had supper with the rest of the family; that she, Bertha Evjen, stayed there until about 9.

Myrtle Fredrickson testified that she was the daughter of Mr. and Mrs. Isaacson; that she was twenty years old; that in 1915 she was home at her father's place and going to school that year; that on the 30th of June her mother returned from Minneapolis, and that all the other children that were going to school always came home for the noon meal. That she spent the Fourth of July at Watford City with her mother and father and brother; that they returned home on the 6th in the evening; that she was home on the 7th of July, and, so far as she could remember, was home on that day and was home for supper that evening; that after her mother came from Watford on the 6th of July the next time she left home for any visit was on the 9th of July; that on the evening of July 7th Mrs. F. Evjen was at their place for supper; the whole family was there; that she had a good memory; that Mrs. Evjen was present for supper the evening of July 7, 1915; that she, the witness, remained home that evening for supper; that she roomed, boarded, and lived at home during the month of July; that she never saw any familiarities between her father and Mrs. Bye.

If this were a criminal prosecution for rape there could not be the least doubt that there is no competent evidence by which a conviction could be sustained, for the reason that there is no competent proof that there was any resistance to the acts of alleged rape. This is an exceedingly important element in the crime of rape, and if it is wholly

absent there is no crime of rape. Resistance must be established as a fact by competent testimony, that is, the acts which constitute the resistance must be detailed and must show that resistance to the full extent of ability was made unless it was prevented by threats of great bodily harm as defined by the statute. The statement of conclusions is not evidence of resistance. As, for instance, such statements as are contained in plaintiff's testimony, that during the act of sexual intercourse she tried to get loose but couldn't, that he held her so tight and strong that she couldn't get away, that she tried all she could to get away from him but he forced himself to her, that she tried to wriggle away from him but that he held her so fast she couldn't, and all similar testimony, are the merest conclusions, and are not statements of fact. There is absolutely no testimony in the record showing any threat of bodily harm by the defendant against the plaintiff. She never at any of the times of alleged rape made a single outcry of any kind or character to attract the attention of anyone who might be in the house or any passer-by. With the element of resistance wholly lacking, there is no evidence of rape.

The plaintiff in two trials in the lower court and in the appeal to this court tried her case upon the theory that she was entitled to damages by reason of the alleged rape committed upon her. The question that presents itself for our consideration is, she having failed to establish a cause of action for rape for the reasons above stated, may she recover upon a cause of action upon which she did not rely in the trial court or in this court? The opinion as written by Justice Robinson, in effect, holds that she may. If she may recover upon other grounds than those upon which the action was maintained, what are those grounds? As I understand the theory, in the opinion of the court, it is upon the ground of assault. In such an assault there would no doubt exist as a basis for damages the injured feelings of the plaintiff and the mental suffering and anguish to which she was subjected by reason of the assault; that would probably be a sufficient basis to support the judgment in question. If all the consequences which followed from such assault, accompanied by sexual intercourse, resulting in the plaintiff's becoming pregnant and being delivered of a child, are to be considered in connection with the assault, and as a part or consequence of it, the judgment may be sustained upon that theory. Under the

theory laid down in the case of Ingvaldson v. Skrivseth, 7 N. D. 388, 75 N. W. 772, no recovery can be had by an unmarried female for her own seduction. Assuming that to be the law of this state, the judgment can be sustained only upon the theory that it is damages for an assault. I concur in the result arrived at in the opinion of Justice Robinson.